**The UNITED STATES**

v.

**James P. WICKSTROM, et al. Victor Francis Rizzo, Appellant.**

No. 89–3040.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 8, 1989.

Decided Dec. 29, 1989.

Charles D. Sheehy, Acting U.S. Atty., Constance M. Bowden and Paul J. Brysh, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

R. Thomas Forr, Jr., Sullivan, Forr, Stokan & Huff, Altoona, Pa., for appellant.

Before MANSMANN and GREENBERG, Circuit Judges, and GAWTHROP, District Judge.*

OPINION OF THE COURT

MANSMANN, Circuit Judge.

We are faced here with a novel appeal premised on the theory that a silencer is not a firearm for the purpose of establishing a base offense level under the Sentencing Guidelines. Since the crime for which defendant was charged, and pled guilty, was conspiracy to possess an unregistered firearm, reference to that title of the United States Code which prescribes the licensing of firearms dispels the defendant's argument. We find that the clear language of title 18 U.S.C.A. § 921 (West 1975), which defines a "firearm silencer" as a firearm, supports the presentencing report's calculation of the defendant's offense severity rating. Consequently, we

* Honorable Robert S. Gawthrop, III of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

will affirm the sentence imposed by the district court.

## I.

In July of 1988, a federal Grand Jury sitting in Pittsburgh handed down a six count indictment against co-defendants James P. Wickstrom, Victor F. Rizzo, Thomas Martin Ryan, David F. Gardner, and Harry Charles Luttner. Victor F. Rizzo, appellant here, was charged with conspiracy, purchase of counterfeit U.S. currency, conspiracy to possess unregistered firearms, (silencers), and possession of unregistered firearms (silencers).

Rizzo originally pled not guilty to all charges, then changed his plea to guilty to two counts: possession of counterfeit currency and conspiracy to possess unregistered firearms. The other counts against Rizzo were nolle prossed on the day he entered his guilty plea. Rizzo cooperated with the government as an informant, leading to the arrest of Wickstrom. Rizzo then testified at the original trial of Wickstrom and Gardner which ended in a mistrial and also testified at Gardner's subsequent trial.

Rizzo was sentenced to 27 months for the two counts to which he pled guilty. He was also sentenced to a two year term of supervised release and a $100 special assessment, which he paid. Rizzo filed this timely appeal from his sentence on the basis that the district court had improperly given an offense severity level of 12 for conspiracy to possess unregistered firearms when the instrument involved was a silencer. In addition, Rizzo challenges the district court's finding that he played a supervisory or managerial position in the offenses charged. Rizzo also asks us to find that the district court erred by refusing to impose a sentence below the Guideline Range when Rizzo cooperated with the government by testifying against Wickstrom and Gardner.

Our review of the district court's determination that a silencer is a firearm for the purposes of § 2K2.2 of the Sentencing Guidelines is plenary since it involves a matter of statutory interpretation. However, the district court's refusal to depart from the Guideline range cannot be reviewed since "the statute providing for appeals by a defendant (18 U.S.C. § 3742) simply does not authorize such an appeal." *United States v. Denardi, et. al.,* (3d. Cir. 1989), 892 F.2d 269, 272. The district court's determination that Rizzo played a supervisory or managerial role in the offense will be affirmed unless it is clearly erroneous since it involves a question of fact.

## II.

Rizzo's first contention is that the district court erred by adopting the presentencing report's offense severity category for conspiracy to possess an unregistered firearm because the presentencing report improperly applied the Sentencing Guidelines with respect to that offense. Rizzo argues that the error occurred because the report equated a "silencer" with a "firearm". Rizzo objected to "silencer" being referred to as a firearm, but the probation officer responded in the report that the reference to a silencer as a firearm was premised on the definition found at 26 U.S.C.A. § 5845(a)(7) which defined a firearm as "any silencer (as defined in section 921 of title 18, United States Code)".

We must determine whether, in defining "firearm" for the purpose of setting a base offense level, the drafters of the Guidelines intended that "silencer" be included in the definition of "firearm", as the government contends, or whether the definition of "firearm" is limited to use as a weapon, as Rizzo contends.

Because Rizzo pled guilty to conspiracy to possess an unregistered firearm, the applicable Guideline to be used is the Guideline for the underlying offense. Section 2K2.2, relating to the possession, receipt, or transportation of firearms in violation of the National Firearms Act provides that the base offense level receives a score of 12. The commentary portion of § 2K2.2 lists the relevant statutory section as 26 U.S.C. § 5861(b)–(*l*). That section is part of chapter 53 of title 26 of the United States

Code which is cited as the National Firearms Act. *See* 26 U.S.C.A. § 5849. The definitional section of the National Firearms Act is 26 U.S.C.A. § 5845 which defines a "firearm" as: "(7) any silencer (as defined in section 921 of title 18, United States Code)". Title 18 U.S.C.A. § 921 provides as follows:

> (3) The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or *firearm silencer;* or (D) any destructive device....

18 U.S.C.A. § 921 (West 1976) (emphasis added).

All three sections, § 5861, § 5845 and § 921 were passed as part of the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1230 (1968). As such, we must read them *in pari materia.* Thus, although neither the Sentencing Guidelines nor 26 U.S.C.A. § 5861 defines "silencer" as a "firearm", it is clear from the language of the definitional sections that Congress intended for a silencer to be considered a "firearm." Indeed, the section analysis of H.Rep. No. 1577 accompanying Pub.L. 90–618, *reprinted at* 1968 U.S.Code Cong. & Admin.News 4410 (1969), states that section 921(a)

> makes it clear that so-called unserviceable firearms come within the definition. Under former definitions of "firearm," any part or parts of such a weapon were included. It was found impractical to have controls over each small part of the firearm, that is, the frame or the receiver. The definition covers mufflers and *silencers....*

1968 U.S.Code Cong. & Admin.News at 4416. (Emphasis added.) Based on the language of the statutes and the House Report, we conclude that Congress intended to include "silencers" within the definition of "firearm" when passing the Gun Control Act of 1968. Because the Guidelines do not affect existing criminal statutes, but rather deal with the punishment for the violation thereof, the existing definitions were not changed by the adoption of the new sentencing system. Consequently, the inclusion of "silencers" in the definition of "firearm" continues to be applicable under the Guidelines.[1]

Because the definition of firearm is given in the Sentencing Guidelines as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive," Rizzo suggests that it is necessary to define "weapon." Rizzo cites to 39 *P.L.E.* Weapons, § 1 which defines weapon as "an instrument of offensive or defensive combat...." He then contends that a silencer is no more a weapon than a straw or a small piece of pipe. For the reasons stated above, we reject this argument.

■ Rizzo also argues that the district court erred when it found that Rizzo had played the role of a manager or supervisor in the commission of the offenses. There is sufficient evidence to support the district court's finding that Rizzo played a supervisory or managerial position. First, Rizzo was the individual who made the initial contact with the undercover agent who was posing as a mafia member in order to establish a supply of counterfeit currency. Second, Rizzo provided the agent with the paper on which to print the counterfeit currency. Third, Rizzo met with the agent and asked if he could obtain false identification papers and silencers for .22 caliber Rugers and ultimately paid for the silencers the agent "sold" him. From this evidence, the district court properly concluded that Rizzo played a managerial or supervisory role in the offenses charged. Therefore, the court did not err by increasing Rizzo's offense severity level by 2 points pursuant to § 3B1.1 of the Guidelines.

---

1. Additional support for our decision can be found in the Commentary to § 2K2.2 of the Guidelines which states: *"Background:* 26 U.S.C. § 5861 prohibits the unlicensed receipt, possession, transportation, or manufacture of certain firearms, such as machine guns, *silencers,* rifles and shotguns with shortened barrels, and destructive devices." Commentary, § 2K2.2. Sentencing Guidelines (1988).

### III.

Rizzo also argues that the district court erred by refusing to impose a sentence below the minimum Guideline range when Rizzo had cooperated with the government and had been an important witness against Wickstrom and Gardner. We have already noted that we do not have jurisdiction to hear the appeal on this issue pursuant to 18 U.S.C.A. § 3742(a)(2). *United States v. Denardi, et al.,* 892 F.2d 269 (3d Cir.1989). Since it is a matter left for the district court's discretion to refuse to depart from the Guidelines, and since Rizzo does not allege that the sentence is an improper application of the Guidelines, nor that it is in violation of the law, we must affirm it. *See* 18 U.S.C.A. § 3742(f)(1)–(3).